**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

BARBARA VANZANDT, Individually, and as Executrix
of the Estate of FRANK VANZANDT, deceased,

                                                    Plaintiffs,

-vs-

                                                                        DECISION AND ORDER

FISH AND WILDLIFE SERVICE, a Federal Agency
under the United States Department of the Interior,                     05-CV-6093 CJS
ELLEN KILEY, and "JOHN DOE," a fictitious name
identifying SEVEN separate, but otherwise unknown,
Individuals,

                                                    Defendants.

---

**APPEARANCES**

For Plaintiffs:                          Robert J. Burke, Esq.
                                         Burke, Albright, Harter & Reddy, LLP
                                         1800 Hudson Avenue
                                         Rochester, NY 14617
                                         (585) 342-4410

For Defendants:                          Terrance P. Flynn United States Attorney
                                         by: Christopher V. Taffe, A.U.S.A.
                                         United States Attorney's Office
                                         100 State Street, Room 620
                                         Rochester, NY 14614
                                         (585) 263-6760, ext. 2226

**INTRODUCTION**

This is a Federal Tort Claims Act ("FTCA") action in which Plaintiffs[1] complain that

agents of the Fish and Wildlife Service tortuously injured them, causing money damages.

The case is now before the Court on Defendants' second motion (Docket No. 22) to

dismiss the third cause of action, and for summary judgment. For the reasons stated

---

[1]Although Barbara VanZandt is the sole named plaintiff now that her husband has died, the
Court refers to her as in the plural as Plaintiffs, since she is representing her husband's estate, as
well as asserting claims of her own.

below, Defendants' motion is denied.

## BACKGROUND

The Court previously granted in part a defense motion to dismiss. *See* Decision and Order, *VanZandt v. Fish & Wildlife Serv.*, No. 05-CV-6093 CJS, 2007 U.S. Dist. LEXIS 13613 (Feb. 28, 2007), familiarity with which will be presumed. This case stems from the execution of a search warrant in which the applicant, individual defendant, Special Agent Eileen Kiley, alleged that evidence of a violation of the Native America Graves Protection and Repatriation Act ("NAGPRA")[2] would be found at the VanZandt home. Although, the complaint set forth eleven causes of action, as a result of the Court's prior decision and order, only the following remain:

THIRD COUNT—(Abuse of Process as against Ellen Kiley and the Fish and Wildlife Service)—at the time of the application for the Search Warrant, Defendants[3] knew, or should have known, that Frank VanZandt was not guilty of any crimes under 18 U.S.C. § 1170 and that no evidence of any such crimes would be found at the VanZandt home. The Court allowed this cause of action to proceed under both the FTCA and *Bivens*.[4]

FIFTH COUNT—(Assault and Battery against all Defendants)—during the four hours of time the VanZandts allege it took for defendants to execute the search warrant, Frank VanZandt, a diabetic, was not permitted to eat and thereby suffered an aggravation

---

[2] Public Law 101-601, enacted on November 16, 1990, and subsequently amended in 1994. The Act contains a criminal sanction for its violation in 18 U.S.C. § 1170, but is primarily codified at 25 U.S.C. § 3001, *et seq*.

[3] The Court notes that as of the date of oral argument on this motion, the John Doe defendants had not been identified by name.

[4] *Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388 (1971), the federal counterpart to 42 U.S.C. § 1983.

of a previous condition, and became sick, sore, lame, and disabled, and remained disabled until the date of his death; suffered, and continued to suffer until the date of his death, great physical and mental pain; was obliged to and did expend large sums of money for medical aid and attention; and was informed, and believed, that his injuries were permanent, and valued at $200,000. The Court permitted this cause of action to go forward only under the FTCA.

SEVENTH COUNT—(Negligence as against all defendants)—in executing the search warrant, defendants breached their duty of care to protect the VanZandts to the fullest extent possible, by failing to allow Frank VanZandt regular access to food, which was medically necessary to maintain his health, with damages amounting to $200,000. This cause of action was permitted by the Court to go forward only under the FTCA.

EIGHTH COUNT—(Intentional Infliction of Emotional Distress as all defendants)—during the time it took to execute the Search Warrant, Defendants verbally assaulted and humiliated Frank VanZandt, made Frank VanZandt the object of derisive comments and gestures, and otherwise deliberately and maliciously harassed and intimidated Frank VanZandt; Defendants' conduct was willful, intentional, unwarranted, and caused severe emotional distress to Frank VanZandt, with damages in the amount of $200,000. This cause of action was permitted by the Court to go forward only under the FTCA.

NINTH COUNT—(Negligent Infliction of Emotional Distress as against all defendants)—Defendants negligently and recklessly and without justification caused severe emotional distress to Frank VanZandt, with damages in the amount of $200,000. This cause of action was permitted by the Court to go forward only under the FTCA.

ELEVENTH COUNT—(Derivative claim, stemming from the Fifth Count, of Barbara VanZandt as against all defendants)—as a result of the incident described in the complaint, Barbara VanZandt has been deprived of the services, society, affection, and consortium of Frank VanZandt and has been caused to expend large sums of money for his medical care and treatment, and continued to do so up until the time of his death, with damages in the amount of $100,000. This cause of action was permitted by the Court to go forward only under the FTCA.

In the present motion, Defendants first move for dismissal of the Third Count, the abuse of process claim against Kiley, contending that Plaintiffs have failed to state a cause of action under Federal Rule of Civil Procedure 12(b)(6). Then, evidently in the alternative, Defendants move for summary judgment under Rule 56(c) in favor of Kiley, based upon probable cause, qualified immunity and insufficiency of evidentiary proof. Plaintiffs oppose the motion.

## STANDARDS OF LAW

### Fed. R. Civ. P. 12(b)(6)

Recently, the U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955 (May 21, 2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted).  *See also*, *ATSI Commc's., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)  When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052 (2000).  On the other hand, "[c]onclusory allegations of the legal status of Defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (*citing In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 400-01 n.3 (2d Cir. 1994)).

## *NAGPRA*

NAGPRA contains a criminal sanction, which states as follows:

§ 1170.  Illegal trafficking in Native American human remains and cultural items

(a) Whoever knowingly sells, purchases, uses for profit, or transports for sale or profit, the human remains of a Native American without the right of possession to those remains *as provided in the Native American Graves Protection and Repatriation Act* shall be fined in accordance with this title, or imprisoned not more than 12 months, or both, and in the case of a second or subsequent violation, be fined in accordance with this title, or imprisoned not more than 5 years, or both.

(b) Whoever knowingly sells, purchases, uses for profit, or transports for sale or profit any Native American cultural items obtained in violation of the Native American Grave Protection and Repatriation Act shall be fined in accordance with this title, imprisoned not more than one year, or both, and in the case of a second or subsequent violation, be fined in accordance with this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 1170 (1994) (emphasis added). NAGPRA protects Native American graves

and cultural objects by defining their ownership as follows:

§ 3002.  Ownership

(a) Native American human remains and objects. The ownership or control of Native American cultural items which are excavated or discovered on *Federal or tribal lands after the date of enactment of this Act* [enacted Nov. 16, 1990] shall be (with priority given in the order listed)--

 (1) in the case of Native American human remains and associated funerary objects, in the lineal descendants of the Native American; or

 (2) in any case in which such lineal descendants cannot be ascertained, and in the case of unassociated funerary objects, sacred objects, and objects of cultural patrimony–

   (A) in the Indian tribe or Native Hawaiian organization on whose tribal land such objects or remains were discovered;

   (B) in the Indian tribe or Native Hawaiian organization which has the closest cultural affiliation with such remains or objects and which, upon notice, states a claim for such remains or objects; or

   (C) if the cultural affiliation of the objects cannot be reasonably ascertained and if the objects were discovered on Federal land that is recognized by a final judgment of the Indian Claims Commission or the United States Court of Claims [United States Court of Federal Claims] as the aboriginal land of some Indian tribe–

   (1) in the Indian tribe that is recognized as aboriginally occupying the area in which the objects were discovered, if upon notice, such tribe states a claim for such remains or objects, or

   (2) if it can be shown by a preponderance of the evidence that a different tribe has a stronger cultural relationship with the remains or objects than the tribe or organization specified in paragraph (1), in the Indian tribe that has

the strongest demonstrated relationship, if upon notice, such tribe states a claim for such remains or objects.

(b) Unclaimed Native American human remains and objects. Native American cultural items not claimed under subsection (a) shall be disposed of in accordance with regulations promulgated by the Secretary in consultation with the review committee established under section 8 [25 U.S.C. § 3006], Native American groups, representatives of museums and the scientific community.

(c) Intentional excavation and removal of Native American human remains and objects. The intentional removal from or excavation of Native American cultural items from Federal or tribal lands for purposes of discovery, study, or removal of such items is permitted only if–

   (1) such items are excavated or removed pursuant to a permit issued under section 4 of the Archaeological Resources Protection Act of 1979 [16 U.S.C. § 470cc] (93 Stat. 721; 16 U.S.C. 470aa *et seq*.) which shall be consistent with this Act;

   (2) such items are excavated or removed after consultation with or, in the case of tribal lands, consent of the appropriate (if any) Indian tribe or Native Hawaiian organization;

   (3) the ownership and right of control of the disposition of such items shall be as provided in subsections (a) and (b); and

   (4) proof of consultation or consent under paragraph (2) is shown.

(d) Inadvertent discovery of Native American remains and objects.

   (1) Any person who knows, or has reason to know, that such person has discovered Native American cultural items on Federal or tribal lands after the date of enactment of this Act [enacted Nov. 16, 1990] shall notify, in writing, the Secretary of the Department, or head of any other agency or instrumentality of the United States, having primary management authority with respect to Federal lands and the appropriate Indian tribe or Native Hawaiian organization with respect to tribal lands, if known or readily ascertainable, and, in the case of lands that have been selected by an Alaska Native Corporation or group organized pursuant to the Alaska Native Claims Settlement Act of 1971 [43 U.S.C. §§ 1601 *et seq*.], the appropriate corporation or group. If the discovery occurred in connection with an activity, including (but not limited to) construction, mining, logging, and agriculture, the person shall cease the activity in the area of the discovery, make a reasonable effort to protect the items discovered before resuming such

activity, and provide notice under this subsection. Following the notification under this subsection, and upon certification by the Secretary of the department or the head of any agency or instrumentality of the United States or the appropriate Indian tribe or Native Hawaiian organization that notification has been received, the activity may resume after 30 days of such certification.

   (2) The disposition of and control over any cultural items excavated or removed under this subsection shall be determined as provided for in this section.

   (3) If the Secretary of the Interior consents, the responsibilities (in whole or in part) under paragraphs (1) and (2) of the Secretary of any department (other than the Department of the Interior) or the head of any other agency or instrumentality may be delegated to the Secretary with respect to any land managed by such other Secretary or agency head.

(e) Relinquishment. Nothing in this section shall prevent the governing body of an Indian tribe or Native Hawaiian organization from expressly relinquishing control over any Native American human remains, or title to or control over any funerary object, or sacred object.

25 U.S.C. § 3002 (1994) (emphasis added).

### *Summary Judgment Standard*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interroga-tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 James Wm. Moore, *et al.*, *Moore's Federal Practice*, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue

of material fact. *See Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir. 1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, *Connecticut Dept. of Pub. Safety v. Doe*, 538 U.S. 1 (2003); *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986).

Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore,

the party opposing summary judgment "may not create an issue of fact by submitting an

affidavit in opposition to a summary judgment motion that, by omission or addition,

contradicts the affiant's previous deposition testimony." *Hayes v. N.Y. City Dep't of Corrs.*,

84 F.3d 614, 619 (2d Cir. 1996).

## ANALYSIS

### *Motion to Dismiss the Third Count*

Defendants argue that Plaintiffs' Third Count, abuse of process, fails to meet the

requirements for that cause of action under New York Law.[5]

> In New York, a malicious abuse of process claim lies against a defendant
> who (1) employs regularly issued legal process to compel performance or
> forbearance of some act (2) with intent to do harm without excuse or
> justification, and (3) in order to obtain a collateral objective that is outside the
> legitimate ends of the process.

*Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Defendants contend that the complaint

fails to adequately allege that Kiley,[6] in applying for a search warrant, acted in furtherance

of a cognizable collateral objective. Defendants contend further that the complaint only

alleges that Kiley acted with a malicious motive ("to deprive the VanZandts of their rightful

possession of the rare and valuable pieces in their Family Collection." Compl. ¶ 29), and

---

[5]Both parties agree that the source for the elements of this cause of action lies in state law.
The Court agrees.

[6]Defendants point out that a *Bivens* claim can only be made against an individual, and since
Kiley is the only named individual, make their arguments on her behalf.

that allegation is insufficient. They rely on *Savino v. City of N.Y.*, 331 F.3d 63 (2d Cir.

2003), in which the Second Circuit stated that,

> the New York Court of Appeals has made clear that "[a] malicious motive alone…does not give rise to a cause of action for abuse of process." *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984); *see also Hauser v. Bartow*, 273 N.Y. 370, 374 (1937) (finding no abuse of process because "whatever may have been respondent's motives, she used the process of the court for the purpose for which the law created it"). In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action. *See Dean v. Kochendorfer*, 237 N.Y. 384 (1924) (distinguishing between improper motive and improper purpose and concluding that improper purpose is necessary to make out an abuse-of-process claim—improper motive is not enough). Accordingly, to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.

*Savino*, 331 F.3d at 77. Plaintiffs counter that the complaint *does* allege a collateral

objective: stealing their legitimately-held and valuable property. Plaintiffs cite to paragraph

twenty-four in the complaint, which was incorporated into the Third Count and states:

"defendants converted to their own use a number of rare and valuable pieces from the

Family Collection." (Compl. ¶ 24.)

The Court determines that the complaint is sufficient to allege that Kiley abused the

warrant process in order to steal valuable property from Plaintiffs, property she had seen

during her visit to the house in an undercover capacity. The Court finds that the factual

allegations in the Third Count are sufficient to raise a right to relief above the speculative

level.

### *SUMMARY JUDGMENT*

#### *Probable Cause*

Defendants contend that since the search warrant was based upon probable cause[7],

it provides a complete defense to the Third Count. In support of their position, Defendants

cite to *Berman v. Silver*, 156 A.D.2d 624, 625 (N.Y. App. Div. 1989) and *Gratano v. City*

*of N.Y.*, No. 98-CV-667 (ILG), 1999 U.S. Dist. LEXIS 18550, 1999 WL 1129611 (E.D.N.Y.

Oct. 18, 1999). In *Gratano*, relying on *Berman*, the district court determined that the

existence of probable cause for the plaintiff's arrest on a charge of leaving the scene of a

property damage accident provided a complete defense to his abuse of process claim

against the police officers who arrested him. Defendants contend that "[f]or an abuse of

process claim, the focus is on the actions of the defendant after the process is issued and

the existence of probable cause is operative as a defense." (Def.s' Reply Mem. of Law at

5.) The Court disagrees with the second part of that statement. In other words, process

properly issued on probably cause can nonetheless be abused. Here, Plaintiffs allege that

although Kiley may have had probable cause to obtain a valid search warrant, she

thereafter abused that warrant as a means of access to unlawfully convert Plaintiffs'

personal property not covered by the warrant. This theory of Plaintiffs' case comports with

the following language from *Webster v. City of N.Y.*, a 2004 district court case:

---

[7]Defendants also argue that "it is manifest that ample probable cause existed for the issuance of the search warrant." (Def.s' Mem. of Law at 13.) Plaintiff disputes this. The Court notes that NAGPRA only protects Indian artifacts found on federal or Indian tribal grounds, not private property. 25 U.S.C. § 3002. The warrant application does not detail whether the area where VanZandt found the artifacts was federal or Indian tribal land. (*See* Ex. A, at 4 (attached to Def.s' Appendix to Statement of Facts Not in Dispute) ("Wortsman stated that the farmer [VanZandt] digs up remains and artifacts on his own property and adjoining properties.").)

> "The gist of the action for abuse of process lies in the improper use of process after it is issued. To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough." *Dean v. Kochendorfer*, 237 N.Y. 384, 390 (1924); *see also Parkin v. Cornell University, Inc.*, 78 N.Y.2d 523, 530 (1991) (observing that it remains unclear "whether this language [from *Dean*] should be viewed as a strict and limiting definition of the tort or whether it is merely illustrative" and that "nothing in this Court's holdings would seem to preclude an abuse of process claim based on the issuance of the process itself").

*Webster v. City of New York*, 333 F. Supp. 2d 184, 208 (S.D.N.Y. 2004). The New York Court of Appeals, relying on the language from *Dean v. Kochendorfer*, stated in a 1991 decision,

> The Appellate Division's alternative holding that abuse of process requires some improper conduct after issuance of process finds support in the language of several of our cases…. We have noted several times that "[t]he gist of the action for abuse of process lies in the improper use of process after it is issued" (*Dean v. Kochendorfer*, 237 NY 384, 390; *see, Curiano v. Suozzi*, 63 NY2d 113, 117; *Hauser v. Bartow*, 273 NY 370, 373). It is not clear, however, whether this language should be viewed as a strict and limiting definition of the tort or whether it is merely illustrative.

*Parkin v. Cornell Univ.*, 78 N.Y.2d 523, 530 (1991). Both of these cases contradict Defendants' argument that so long as probable cause existed for issuance of the search warrant, there can be no abuse of process.

Defendants also argue that Plaintiff's reliance on the English case of *Grainger v. Hill*, 4 Bing. (N.C.) 211, 132 Eng.Rep. 769 (1838), is misplaced, since, according to Defendants, the rule in that case only shows that alleging lack of probable cause is unnecessary in a cause of action for abuse of process. The Third Circuit addressed *Grainger* when interpreting Pennsylvania law on abuse of process, and their observations are cogent here:

> The tort of malicious abuse of process originated with the English case, *Grainger v. Hill*, 4 Bing. (N.C.) 211, 132 Eng.Rep. 769 (1838), and that case

is helpful in understanding the Pennsylvania cases we must follow here for purposes of determining the statutory period. In *Grainger* the defendants had loaned money to the plaintiff, secured by a mortgage on the plaintiff's ship. Under apprehension of the sufficiency of their security, the defendants demanded payment before it was due. Upon plaintiff's refusal, they had him arrested under a *capias* to force him to surrender the ship's registry, without which he could not sail. Process was maliciously used because there was no probable cause for arrest and was maliciously abused to force the plaintiff to pay money not owed and to prevent him from going to sea. Because plaintiff settled the debt with the defendants and, accordingly, did not receive a judgment in his favor, he was precluded from suing for malicious use of process. In holding for the plaintiff, Chief Justice Tindall said, "(T)his is an action for abusing the process of law, by applying it to extort property from the Plaintiff…and his complaint being that the process of law has been abused, to effect an object not within the scope of the process, it is immaterial…whether or not it (the suit against the plaintiff) was founded on reasonable and probable cause." 4 Bing. (N.C.) at 221, 132 Eng.Rep. at 773. Therefore, according to Grainger, if the facts allege an abuse of process, that they also allege a lack of probable cause is immaterial; it does not make the tort sound in only malicious use of process.

*Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977). The Third Circuit concluded that under Pennsylvania law "in a malicious abuse of process case, presence or absence of probable cause is irrelevant." *Id*. at 1218 (footnote omitted).

Plaintiffs argue that even if Kiley properly obtained a search warrant, which they do not concede, she abused the access that warrant gave her by stealing property not a part of the warrant and converting that property to her own use. (Compl. ¶¶ 24, 30.) The Court is persuaded by the language in *Webster* and *Parkin* that even if Kiley demonstrated probable cause for issuance of the search warrant, it does not form a complete defense to the allegations that she improperly used the warrant after it was issued. Accordingly, Defendants' motion to dismiss the abuse of process cause of action on this theory is denied.

***Qualified Immunity***

In her argument for summary judgment, Kiley asserts that she is entitled to qualified immunity. Relying on *Rapkin v. Rocque*, 228 F. Supp. 2d 142, 146 (D. Conn. 2002), she contends that: (1) Plaintiff has not sufficiently alleged a violation of a constitutional right; (2) that the constitutional right at issue was clearly established at the time of Kiley's actions; and (3) that Kiley's actions were reasonable in light of the standards established at the time. The Court disagrees with Kiley's contentions on factors one and three (factor two is not in contention). As to the first factor, Kiley relies on Defendants' arguments on the motion to dismiss the abuse of process claim. The Court has already rejected that argument, and, therefore, also rejects it for the purpose of the qualified immunity analysis.

Turning to the third factor, Defendants state that "[h]ere, the issue is whether SA Kiley's decision to *apply for* the search warrant to search for evidence of violations of 18 U.S.C. [§] 1170 was objectively reasonable." (Def.s' Mem of Law at 17 (emphasis added).) The Court disagrees. The focus of the Court's analysis is on Kiley's "actions" *after* the warrant was issued. As thoroughly discussed above, whether Kiley had probable cause to obtain a valid search warrant is irrelevant to her abuse of that valid warrant after it was supposedly properly issued. Plaintiffs allege that Kiley's "actions" involved the theft of their personal property by using the warrant to obtain access to the inside of their house. Certainly she cannot contend that conversion is a reasonable action entitled to qualified immunity.

Defendants also contend that the tort of abuse of process under New York law requires proof that Kiley was in pursuant of a collateral objective *at the time she applied for the warrant*. They contend that since her application was completely legitimate, that it

Page 15 of  19

was made in her law enforcement capacity, and that Plaintiffs have failed to show that

Kiley's intention was to enter the VanZandt's house in order to steal from her, she is

entitled to qualified immunity. The Court has already rejected Kiley's argument that the

focus of the qualified immunity analysis is on her actions in *obtaining* the warrant.

Nevertheless, for the sake of argument, the Court will also address Defendants' contention

that Plaintiffs are required to prove that she possessed a collateral objective at the time

she applied for the warrant. The Court first notes that NAGPRA defines the items it

protects as follows:

> (3) "cultural items" means human remains[8] and—
>
> (A) "associated funerary objects" which shall mean objects that, as a part of the death rite or ceremony of a culture, are reasonably believed to have been placed with individual human remains either at the time of death or later, and both the human remains and associated objects are presently in the possession or control of a Federal agency or museum, except that other items exclusively made for burial purposes or to contain human remains shall be considered as associated funerary objects.[,]
>
> (B) "unassociated funerary objects" which shall mean objects that, as a part of the death rite or ceremony of a culture, are reasonably believed to have been placed with individual human remains either at the time of death or later, where the remains are not in the possession or control of the Federal agency or museum and the objects can be identified by a preponderance of the evidence as related to specific individuals or families or to known human remains or, by a preponderance of the evidence, as having been removed from a specific burial site of an individual culturally affiliated with a particular Indian tribe,
>
> (C) "sacred objects" which shall mean specific ceremonial objects which are needed by traditional Native American religious leaders for the practice of traditional Native American religions by their present day adherents, and
>
> (D) "cultural patrimony" which shall mean an object having ongoing

---

[8]Defined in the regulations as, "the physical remains of the body of a person of Native American ancestry." 43 C.F.R. § 10.2(d)(1) (2006).

> historical, traditional, or cultural importance central to the Native American group or culture itself, rather than property owned by an individual Native American, and which, therefore, cannot be alienated, appropriated, or conveyed by any individual regardless of whether or not the individual is a member of the Indian tribe or Native Hawaiian organization and such object shall have been considered inalienable by such Native American group at the time the object was separated from such group.

25 U.S.C. § 3001(3)(A)-(D) (1990). Plaintiffs have shown that, after Kiley and her team left the VanZandt's house, items not related to the purpose of the warrant were missing. (*See* List of Items Removed, attached to Compl.; VanZandt Dep. (Jan. 18, 2006) at 8-9.) For example, Plaintiffs allege that Kiley took 50 Civil War letters, 12 Civil War photos of soldiers and others, SNY Civil War belt buckle, a rare book entitled *Illustrated History of the United States Mint*, by George Evans, and dated 1886, as well as a Gettysburg Reunion medal and silver eagle dollar with a recent date. None of these items appears to fit within NAGPRA's definitions.

While Plaintiffs can only surmise Kiley's motive, they present a substantial amount of circumstantial evidence to support their conclusion that she obtained the warrant for the purpose of stealing non-NAGPRA artifacts. For example, although six-and-one-half weeks prior to obtaining a search warrant, Kiley purchased a rondel, which resembled one she saw at the VanZandt house and which she thought violated NAGPRA, she has presented no evidence showing that she obtained confirmation that the item she obtained, or those she sought to obtain from the VanZandt home, were protected by NAGPRA, which covers only Native American human remains and artifacts discovered on federal land or Indian territory after 1990. (*See*  Kiley Dep. at 18 (she purchased a rondel and placed it into evidence in her office).) She states only that she determined, from her reading of the law, that the rondel she purchased "would be covered" under NAGPRA. (*Id*. at 19.) It was not

until after execution of the search warrant that Kiley had the rondel examined by an expert at the Smithsonian Institution. (*Id*. at 23.) The Smithsonian's expert was unable to determine if the rondels (one Kiley purchased, one she obtained via the search warrant) were of Native American origin. (Kiley Dep. at 43.) Further, when she visited the VanZandt home in an undercover capacity, Kiley observed, "[a]ll sorts of Native American and Civil War memorabilia…." (*Id*. at 32.) As Barbara VanZandt testified at her deposition, during her undercover visit to the house, Kiley

> showed a lot of interest in the Civil War stuff and in the Indian stuff, both. And Howard Wortzman was there also, he's an antique dealer, showed a lot of interest in that stuff, and then all of a sudden [following the search] that's the stuff that disappears.

(VanZandt Dep. (Jan. 18, 2006) at 111.) At the end of the search warrant execution, Civil War artifacts were missing. Barbara VanZandt also testified that Fish and Wildlife agents at her house executing the search warrant walked out the back door several times, which was located "farthest away from the cars. Direct route would have been through the front door, but they would have had to pass [Kiley], Frank, and [me]." (VanZandt Dep. at 112.)

The Court concludes from the proof submitted on this motion that Kiley is not entitled to qualified immunity, whether asserted as a part of the motion to dismiss or the motion for summary judgment. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (traditional qualified immunity defense may be raised in an Fed. R. Civ. P. 12(b)(6) or summary judgment motion). If Plaintiffs prove that she converted items while executing the search warrant, as alleged and testified to by Barbara VanZandt, then Kiley's actions were not reasonable in light of the standards established at the time.

***Insufficiency***

Defendants also seek summary judgment on the Third Count, arguing that Plaintiffs have proven no more than "rank speculation and unsubstantiated inferences as to SA Kiley's intent and motive." (Def.s' Mem. of Law at 21.) They contend that because of this insufficiency in Plaintiff's proof, and a lack of any genuine dispute as to a material issue of fact, Kiley is entitled to judgment as a matter of law. However, since as previously indicated, the Court disagrees with Defendants' interpretation of New York law on abuse of process, it necessarily denies summary judgment on the basis of "insufficiency." That is, viewing the evidentiary proof in a light most favorable to Plaintiffs, even if Kiley obtained the search warrant legitimately, she subsequently abused it.  Plaintiffs' evidence shows that Kiley used the access to the VanZandt house that the warrant gave her and her fellow special agents to accomplish an illegal purpose. This is sufficient to show an abuse of process. Kiley, of course, disputes that any property was converted, and, therefore, raises a material issue of fact as to whether the search warrant was "perverted to the accomplishment of an improper purpose…." *Dean*, 237 N.Y. at 390. Accordingly, since there is a material issue of fact, summary judgment is unavailable.

## CONCLUSION

For the foregoing reasons, Defendants' motion (# 22) to dismiss the Third Count and for summary judgment on the Third Count, is denied.

Dated:   November 29, 2007
         Rochester, New York

Enter:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge