# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

BARBARA VANZANDT, Individually and as
Executrix of the Estate of Frank Vanzandt,
deceased,

                                  Plaintiffs,

            -vs-                            DECISION and ORDER
                                                        05-CV-6093-CJS

FISH AND WILDLIFE SERVICE, A Federal
Agency under the United States Department of the
Interior, *et al.*

                                  Defendants.

## APPEARANCES

For Plaintiffs:                      Robert J. Burke, Esq.
                                          Burke, Albright, Harter & Reddy, LLP
                                          1800 Hudson Avenue
                                          Rochester , NY 14617
                                          (585) 342-4410

For Defendants:                  Christopher V. Taffe, Esq.
                                          U.S. Attorney's Office
                                          100 State Street Room 620
                                          Rochester , NY 14614
                                          (585) 263-6760, ext. 2226

## INTRODUCTION

This matter is before the Court on the Government's motion (Docket No. 35) to dismiss the *Bivens*[1] claim in the Third Count of Plaintiffs' complaint. Following the precedent in *Hudson v. Palmer*, 468 U.S. 517, 531-32 (1984) and *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986), as well as other precedent from this circuit, the Court grants the motion.

## BACKGROUND

The Court will assume familiarity with its prior decision, which laid out the background of this case. *VanZandt v. Fish and Wildlife Service*, No. 05-CV-6093 CJS, 2007 WL 670959 (W.D.N.Y. Feb. 28, 2007). For the purpose of this motion, the Court will incorporate necessary facts in its analysis, below.

## STANDARD OF LAW

In *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955 (May 21, 2007), the U.S. Supreme Court clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

---

[1] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803 (2d Cir. Jun. 14, 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.) When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

**ANALYSIS**

In this application, the Government again moves to dismiss the Third Count of the complaint. In essence, the Third Count makes a *Bivens* claim alleging that Kiley had no probable cause to obtain the search warrant, and used it as a stalking horse to gain official access to Plaintiffs' house where federal agents proceeded to steal property that was not within the provisions of the warrant. At oral argument, Plaintiffs' counsel did not dispute the Government's contentions that the *Bivens* claim is based upon a procedural due process.

The Government argues that the Court lacks jurisdiction over the Third Count because "a *Bivens* action premised upon a procedural due process claim is not cognizable where an adequate alternative remedy exists." (Gov't Mem. of Law at 2.) More specifically, the Government, citing *Locurto v. Safir*, 264 F.3d 154 (2d Cir. 2001), maintains that to the extent Plaintiffs are seeking recovery under the Federal Tort Claims Act ("FTCA"), a *Bivens* claim is precluded. In *Locurto*, the Second Circuit observed that:

> the Supreme Court has expressly limited *Bivens* claims which allege violations of procedural due process. "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted). "Under the latter scenario, a deprivation effectuated through the random and unauthorized acts of government officials does not violate procedural due process so long as the government provides a meaningful remedy subsequent to deprivation."

*Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001). The Second Circuit explained the reasoning for this distinction as follows: "because the challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after deprivation." *Locurto*, 264 F.3d at 172.

In opposition to the Government's motion to dismiss, Plaintiffs rely primarily on the Supreme Court's decision in *Carlson v. Green*, 446 U.S. 14 (1980), which created a *Bivens* cause of action against federal prison officials under the Eighth Amendment. The following discussion in the opinion pertains to Plaintiffs' argument that the *Locurto* exception to a *Bivens* cause of action is not applicable here:

*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right. Such a cause of action may be defeated in a particular case, however, in two situations. The first is when defendants demonstrate "special factors counseling hesitation in the absence of affirmative action by Congress." [*Bivens v. Six Unknown Fed. Narcotics Agents*,] 403 U.S. [388], at 396 [(1971)]; *Davis v. Passman*, 442 U.S. 228, 245 (1979). The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective. *Bivens*, supra, at 397; *Davis v. Passman, supra*, at 245-247.

Neither situation obtains in this case. First, the case involves no special factors counselling hesitation in the absence of affirmative action by Congress. Petitioners do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate. *Davis v. Passman*, *supra*, at 246. Moreover, even if requiring them to defend respondent's suit might inhibit their efforts to perform their official duties, the qualified immunity accorded them under *Butz v. Economou*, 438 U.S. 478 (1978), provides adequate protection. *See Davis v. Passman*, *supra*, at 246.

Second, we have here no explicit congressional declaration that persons injured by federal officer's violations of the Eighth Amendment may not recover money damages from the agents but must be remitted to another remedy, equally effective in the view of Congress. Petitioners point to nothing in the Federal Tort Claims Act (FTCA) or its legislative history to show that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations. n5[2] FTCA was enacted long before *Bivens* was decided, but when Congress amended FTCA in 1974 to create a cause of action against the United States for intentional torts

---

[2]Footnote five of the Supreme Court's opinion is as follows:

To satisfy this test, petitioners need not show that Congress recited any specific "magic words." *See* the dissenting opinion of THE CHIEF JUSTICE, post, at 31, and n. 2. Instead, our inquiry at this step in the analysis is whether Congress has indicated that it intends the statutory remedy to replace, rather than to complement, the *Bivens* remedy. Where Congress decides to enact a statutory remedy which it views as fully adequate only in combination with the *Bivens* remedy, *e. g.*, 28 U.S.C. § 2680 (h), that congressional decision should be given effect by the courts.

committed by federal law enforcement officers, 28 U. S. C. § 2680 (h), the congressional comments accompanying that amendment made it crystal clear that Congress views FTCA and Bivens as parallel, complementary causes of action:

> "[After] the date of enactment of this measure, innocent individuals who are subjected to raids [like that in *Bivens*] will have a cause of action against the individual Federal agents and the Federal Government. Furthermore, this provision should be viewed as a counterpart to the *Bivens* case and its progeny [sic], in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in *Bivens* (and for which that case imposes liability upon the individual Government officials involved)." S. Rep. No. 93-588, p. 3 (1973) (emphasis supplied).

In the absence of a contrary expression from Congress, § 2680(h) thus contemplates that victims of the kind of intentional wrongdoing alleged in this complaint shall have an action under FTCA against the United States as well as a *Bivens* action against the individual officials alleged to have infringed their constitutional rights.

*Carlson*, 446 U.S. at 20. In *Farmer v. Perrill*, 275 F.3d 958 (10th Cir. 2001), the Tenth Circuit explained the interaction between a *Bivens* claim and an FTCA claim with respect to the same tort:

> By its terms Section 2676 makes a final judgment on an FTCA claim preclusive against any Bivens action based on the same underlying complaint. As *Engle*, 24 F.3d [133] at 135 [(10th Cir. 1994)] (citations omitted) teaches succinctly:
>
>> When a federal law enforcement officer commits an intentional tort, the victim has two avenues of redress: 1) he may bring a *Bivens* claim against the individual officer based on the constitutional violation, or 2) he may bring a common law tort action against the United States pursuant to the FTCA. These are separate and distinct causes of action arising out of the same transaction. A decision to sue the government, however, affects the availability of a *Bivens* action against the federal

> officer. Although the plaintiff may elect initially to bring his action against either defendant, a judgment against the United States under the FTCA constitutes "a complete bar to any action by the claimant, by reason of the same subject matter, against the employee ... whose act or omission gave rise to the claim."

*Farmer*, 275 F.3d at 962.

In *Locurto*, the case upon which the Government relies, the plaintiffs "each brought suit pursuant to 42 U.S.C. § 1983…, alleging they were terminated illegally from their positions of public employment with the City of New York. They claim they were fired without due process, and in retaliation for participating in the racially offensive[3] float." *Locurto*, 264 F.3d at 158. None of the defendants was a federal official. *Id*. The plaintiffs alleged violations of their First Amendment free speech rights as well as their due process rights. *Id*. at 161. At issue was whether prior to being fired, the plaintiffs were afforded an adequate[4] hearing. *Id*. at 161-62. In its discussion of the due process claim, the Second Circuit stated: "the only issue raised by defendants is whether plaintiffs' allegation of due process violations at their administrative hearings is foreclosed by the existence of an adequate post-deprivation remedy in the form of an Article 78 proceeding under New York law." *Locurto*, 264 F.3d at 170. The Second Circuit then cited to the Supreme Court's decision in *Hudson v. Palmer*, 468 U.S. 517, 531-32 (1984) and stated,

---

[3]The float was entitled "'Black to the Future -- Broad Channel 2098'" about which the Court stated it was a "theme purportedly parodying African Americans while referring to the future effects of racial integration on the predominantly Caucasian community of Broad Channel." *Locurto*, 264 F.3d at 158.

[4]The Court observed that, "[o]rdinarily, the due process clause of the Fourteenth Amendment requires that a state or local government afford persons 'some kind of a hearing' prior to depriving them of a significant liberty or property interest." *Locurto*, 264 F.3d at 171 (citations omitted).

> a deprivation effectuated through the random and unauthorized acts of government officials does not violate procedural due process so long as the government provides a meaningful remedy subsequent to the deprivation.... The rationale for this principle is plain: because the challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation.

*Locurto*, 264 F.3d at 172 (citations omitted). From this decision, the Government argues here that intentional misconduct by a federal agent is random and unauthorized conduct, and, that therefore, a *Bivens* action is barred since an adequate remedy (under the FTCA) exists. (Gov't Mem. of Law at 5.) In that regard, the Government maintains: "This limitation on a *Bivens* cause of action has been recognized and applied by courts within the Second Circuit to bar procedural due process claims based upon the deprivation of property by random and unauthorized acts of government officials where adequate remedies otherwise exist." (Gov't Mem. of Law at 5.)

In support of its position, the Government relies on several cases, two of which the Court discusses here since they involve federal defendants: *Arias v. United States*, No. 05-CV-10497(DAB), 2007 WL 4157152 (S.D.N.Y. Nov. 15, 2007) and *Ramirez v. Obermaier*, No. 91-CV-7120(RPP), 1992 WL 320985 (S.D.N.Y. Oct. 28, 1992). In *Arias*, the district court dismissed the claims against the federal agents, styled as *Bivens* claims, because they were made under 42 U.S.C. § 1983, which, the district court held, was not applicable to federal agents. In addressing the plaintiff's property claim for a door broken during the allegedly illegal entry, the district court stated that,

> Plaintiffs' Fifth Cause of Action alleges that Ahearne and Doe Defendants damaged the front door of their apartment and also a bedroom door thus depriving them of property without providing just compensation, in violation

> of the Due Process Clause of the Fifth Amendment. The Supreme Court has held that "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson*, 473 U.S. 172, 194-95, 105 S.Ct. 3108 (1985) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016-20, 104 S.Ct. 2862 (1984)). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. , provides for "an action against the United States in tort for property taken or lost by federal employees acting within the scope of their employment." *Ramirez v. Obermaier*, No. 91 Civ. 7120(RPP), 1992 WL 320985, at *7 (S.D.N.Y.1992). Since Plaintiffs have an adequate remedy under the FTCA for the alleged damage to their apartment, they are precluded from asserting a claim under the Fifth Amendment's Due Process Clause against any of the individual Defendants.

*Arias*, 2007 WL 4157152, *17. The case upon which the *Arias* court relied, *Williamson*, was a civil rights suit against a town planning commission, and there the Supreme Court held that the plaintiff needed to exhaust the available remedies under Tennessee law before attempting to obtain compensation in a Fifth Amendment[5] 42 U.S.C. § 1983 lawsuit. The Court specifically recognized that "a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation is analogous to the Court's holding in *Parratt v. Taylor*, 451 U.S. 527 (1981)." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985).

In *Ramirez*, the plaintiff alleged that agents of the United States violated 42 U.S.C. § 1983 and Federal Rule of Criminal Procedure 41 in the manner in which they disposed

---

[5]The Fifth Amendment, which provides that private property shall not be taken for public use without just compensation, is made applicable to states through Fourteenth Amendment. *Phillips v. Washington Legal Found*, 524 US 156 (1998).

of his seized property, alleging that one federal agent, Dowd, "orchestrated a transfer, without prior court approval or order, of seventy jewelry items belonging to Ramirez, his deceased wife, and children, to Ramirez's estranged second wife…in exchange for her testimony against Ramirez in a state criminal proceeding." *Ramirez*, 1992 WL 320985, *2. In addressing Ramirez's claim that Dowd's alleged *intentional* deprivation of property was actionable, the district court stated,

> Nor is Ramirez's claim against Dowd for intentional deprivation of property sufficient to state a violation of the Fifth Amendment where there exists an adequate postdeprivation remedy. *See Hudson*, 468 U.S. at 533 ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation" of due process "if a meaningful postdeprivation remedy for the loss is available. For intentional ... deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.").

*Ramirez*, 1992 WL 320985, at *6.

While both *Hudson* and *Parratt* dealt with claims against state officials where federalism and state sovereign immunity had to be considered. *See Bivens*, 403 U.S. at 396 ("special factors counseling hesitation in the absence of affirmative action by Congress."), the case law cited by the Government supports the application of the *Hudson* and *Parratt* holdings to *Bivens* procedural due process claims against federal officers. At oral argument, Plaintiffs' counsel candidly admitted that he could cite no case law to support his position that a plaintiff may sue under the FTCA and *Bivens* for a procedural due process claim.

The *Carlson* case, upon which Plaintiffs rely, is distinguishable, since it involves the Eighth Amendment. Here, Plaintiffs have not argued that the property claims against Kiley stem from the Eighth Amendment, or, as was the case in *Bivens*, the Fourth Amendment.

Since Plaintiffs have conceded that their claims arise under the Due Process clause of the Fifth Amendment, the Court finds no distinguishing characteristic about this case from the Second Circuit's holding in *Locurto*, or the district court cases cited above. Since Congress has provided for a claim under the FTCA, this Court dismisses the *Bivens* claim against Kiley.[6]

## CONCLUSION

For the reasons stated above, Plaintiffs' procedural due process *Bivens* claim in the Third Count is dismissed.

IT IS SO ORDERED.

Dated:   November 6, 2008
         Rochester, New York

                ENTER:

                          /s/ Charles J. Siragusa
                          CHARLES J. SIRAGUSA
                          United States District Judge

---

[6] Of course, the claims against the John Doe defendants, who have so far not been identified, will also have to be dismissed under the same rationale, once those defendants are identified.